FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR -3 PM 1:29

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALVIN J. SCHOUEST, JR. | CIVIL ACTION |
| VERSUS | NUMBER: 05-132 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION: "C"(5) |

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II and Part A of Title XVIII of the Social Security Act. (Rec. docs. 10, 12).

Alvin Schouest, Jr., plaintiff herein, filed the subject application for DIB on September 10, 2003, with a protective filing date of September 5, 2003. (Tr. pp. 33, 35-37). In a Disability Report completed on September 10, 2003, plaintiff identified severe obstructive sleep apnea and high blood pressure as the conditions resulting in his inability to work. Those conditions, according to

___ Fee___
___ Process___
X Dktd___
✓ CtRmDep___
___ Doc. No___

plaintiff, caused him to fall asleep anytime.[1] (Tr. p. 45). The aforementioned conditions first began to bother plaintiff on July 23, 2003 and became disabling on August 4, 2003. (Tr. p. 45). *Plaintiff's application for DIB was denied initially and upon* reconsideration. (Tr. pp. 18, 19-22).

On December 8, 2003, plaintiff lodged a formal request for a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. p. 23). Pursuant to that request, a hearing was scheduled for June 21, 2004, at which time plaintiff, his attorney, and a Vocational Expert ("VE") appeared. (Tr. p. 174). As will be discussed further infra, the transcript generated at that hearing is insufficient for dealing with plaintiff's current claims.

On June 26, 2004, the ALJ issued a decision unfavorable to the plaintiff, finding that he was not disabled within the meaning of the Social Security Act. (Tr. pp. 10-16). The plaintiff sought review of the decision of the ALJ (Tr. pp. 7, 9), which was denied by the Appeals Council ("AC") on November 18, 2004. (Tr. pp. 4-6). Thus, the decision of the ALJ became the final decision of the

---

[1]/ Because certain of plaintiff's medical records (Tr. pp. 102, 119, 120) reflect a diagnosis of narcolepsy, the Court will consider that plaintiff, who was pro se at the time he filed his initial request for benefits, is also making a claim for disability based upon this condition as well. The Court notes that narcolepsy is a condition which can cause an individual to fall asleep without any warning.

Commissioner. It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In his cross-motion for summary judgment, plaintiff presents one claim for judicial review, namely, that the ALJ erred in finding that plaintiff could work despite his medical conditions. (Rec. doc. 10, p. 5). Relevant to the resolution of that claim are the following findings made by the ALJ:

> 1. [t]he claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2007.
>
> 2. [t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. [t]he claimant has the following medically determinable impairment(s): sleep apnea and high blood pressure.
>
> 4. [t]he claimant does not have any impairment or impairments that significantly limit his ability to perform basic work-related activities; therefore, the claimant does not have a "severe" impairment (20 CFR §§404.1520 and 416.920).
>
> 5. [t]he claimant was not under a "disability" as defined in the Social Security Act any time through the date of this decision (20 CFR §§404.1520(c) and 416.920(c)).
>
> (Tr. p. 16).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992);

Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of

performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

> 1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. an individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. an individual who meets or equals a listed impairment in *Appendix 1 of the Regulations will be considered* disabled without consideration of vocational factors.
>
> 4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.
>
> 5. if an individuals's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the burden of proving that he is disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). A finding that the claimant is disabled or not disabled at any point in the sequential review process is conclusive and terminates the Commissioner's analysis. Wren v. Sullivan, 925 F.2d 123, 125-26 (5th Cir. 1991).

A review of the transcript of the administrative hearing

conducted on June 21, 2004 before the ALJ does not reveal the depth of information which the Court usually has available for consideration in the current judicial review process. At that hearing, the claimant advised that he had attempted to work from January 19, 2004 until May 20, 2004, at which time he was forced to cease work due to a back related injury. (Tr. pp. 178-179). The ALJ did not inquire into the reason for plaintiff's injury or attempt to determine if it was related to the medical condition upon which he predicated his application for DIB. Neither does the record reflect if plaintiff was working full or part time. Rather, there seemed to be a discussion of whether this period of work would deprive the plaintiff of the time period for which disability needed to be established in order to qualify for benefits. (Tr. p. 178). Yet in his findings of fact, the ALJ determined that plaintiff had "not engaged in substantial gainful activity since the alleged onset of disability", apparently viewing this period of work as an abortive attempt to work which does not affect plaintiff's right to claim benefits. No other information pertaining to plaintiff's claim or to his ability to function was elicited at the hearing and the "VE" who was in attendance gave no testimony. (Tr. pp. 176-182).

Medical records pertaining to plaintiff's alleged disabling condition reflect that on July 23, 2003, plaintiff was seen at the

Family Doctor Clinic of Matthews complaining of fatigue, snoring, falling asleep during the day, and narcolepsy. He was assessed as suffering with sleep apnea, fatigue, and narcolepsy. Split sleep studies with a C-pap titration study were recommended. (Tr. p. 120). On July 26, 2003, those tests were conducted. (Tr. pp. 90-92). On August 4, 2003, an interpretation of the results of the tests reflected that plaintiff suffered with "severe obstructive sleep apnea". (Tr. p. 92). On that same date, a Certificate of Medical Necessity was issued by a physician at Total Sleep Diagnostics reflecting plaintiff's need for a nasal CPAP unit with heated humidifier. (Tr. p. 89).

On August 4, 2003 plaintiff was seen in the emergency room of St. Anne General Hospital for intermittent chest pains which occurred at work. His diagnosis at that time reflected sleep apnea and narcolepsy. (Tr. p. 102). Following his release from the emergency room, he was seen the same day at the Family Doctor Clinic of Matthews. It was noted that his right nasal turbinates were swollen shut for which he was given an injection of Depomedrol and a prescription for Flonase. He was assessed as suffering from sleep apnea, hypertension, narcolepsy, and acute sinusitis. (Tr. p. 119). Plaintiff had a follow-up appointment at the Family Doctor Clinic of Matthews on August 19, 2003 at which time he was treated for strep throat, causing severe obstruction, and it was reiterated

that he suffered with sleep apnea. (Tr. p. 117).

On August 29, 2003, Dr. Michael R. Robichaux, Sr., a specialist in the field of otolaryngology, issued a report (Tr. pp. 141) pertinent to plaintiff's condition, as follows:

> I've had the pleasure to see and evaluate Alvin Schouest, Jr. for problems with severe obstructive sleep apnea. Alvin's problems have been bad enough that he's been unable to work because of somnolence and the tendency to fall asleep on the job. A sleep study was performed on Alvin which revealed severe obstructive sleep apnea and hypoxia syndrome. In addition to his sleep apnea, Alvin has a significant amount of nasal congestion and moderately deflected nasal septum.
>
> It was our feeling that Alvin would probably benefit significantly with a septoplasty and inferior turbinate reduction or removal along with the uvulopalatoplasty. **Since his inability to work has deprived him of funds necessary to have this performed in the private sector,** he requested that I write to you and request that you consider evaluating him and performing any procedures you might consider appropriate to help alleviate his symptoms.

(Tr. p. 141)(emphasis added).

*In his written opinion,* the ALJ noted that the evidence established that plaintiff experienced significant fatigue and headaches secondary to severe obstructive sleep apnea. He further noted that because of this condition, plaintiff had a "tendency to fall asleep at work." (Tr. p. 15). In further support of the fact that plaintiff showed evidence of narcolepsy, the Court notes that, in the Field Office Disability Report generated by D. Talbot on September 11, 2003 pertaining to plaintiff's claim, in the

"Observations" section of the form wherein claimant's behavior was to be noted, the interviewer stated the following:

> He was dressed OK. He wore a welders cap. His breathing got loud at times during the interview. When I went to the printer to get his application he went to sleep. During the interview I felt he wanted to go to sleep at times. I kept talking to keep him awake.

(Tr. p. 72).

The Court does not view a condition which causes one to fall asleep at work as one which is not severe. Indeed, the initial case summary, dated October 30, 2003, pertaining to plaintiff's claim prior to the initial denial of his request for benefits viewed his impairments as severe but denied the claim for other reasons. (Tr. p. 68).

While both the ALJ and the Government in the cross-motion for summary judgment appear to fault the plaintiff for not having undergone recommended surgery, there is no information other than as suggested above, i.e., that plaintiff did not undergo surgery because he lacked the funds to pay for it. If this is, in fact, the case, he cannot be penalized in this regard. See Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). But the record as presently constituted lacks definitive information as to what his situation might be in that regard other than to indicate that, because of insurance issues, he has had difficulty obtaining needed treatment. (Tr. p. 177).

The Court finds that the ALJ erred in concluding that plaintiff did not suffer from a severe impairment at the second step of the five-step sequential analysis. A "severe impairment" is defined as any impairment or combination of impairments which significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c); Shipley v. Secretary of Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987). Stated otherwise, an impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of his age, education, or work experience. 2/ Anthony, 954 F.2d at 293; Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985); Estran v. Heckler, 745 F.2d 340, 341 (5th Cir. 1984).

Having reviewed the administrative record in its entirety, the

---

2/ The current standard is a mere clarification of the 1968 Regulation which defined a non-severe impairment as "... a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." 20 C.F.R. §404.1502(a)(1968). This is made clear in cases such as Estran v. Heckler, 745 F.2d 340 (5th Cir. 1984) in which the Fifth Circuit held that the 1968 definition of non-severity is incorporated into, not supplanted by, the current standard. Failure to consider the current Regulation in light of the one existing in 1968 has been found to constitute error and to justify a remand. Davis v. Heckler, 759 F.2d 432, 435-36 (5th Cir. 1985)(and cases cited therein disapproving of the summary rejection of the disability claims at the second step of the sequential analysis.)

Court is of the opinion that the ALJ concluded his consideration of plaintiff's application for Social Security benefits prematurely at the second step of the five-step sequential analysis. The Fifth Circuit has disapproved of the use of the Regulations to summarily dismiss claims at this early stage without consideration of the remaining steps. Anthony, 954 F.2d at 293-94; Stone, 752 F.2d at 1102-04. The transcript of the administrative hearing is factually lacking in terms of what the plaintiff can and cannot do, the issue of whether plaintiff suffers from severe narcolepsy, in addition to sleep apnea, has not been explored, nor has the plaintiff's financial ability to undergo recommended surgical treatment been adequately fleshed out. But suffice it to say that the record does contain sufficient information for the Court to conclude that plaintiff does, indeed, suffer from more than a "slight abnormality" so that dismissal of his claim at step two of the sequential process is inappropriate.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that this matter be remanded to the Commissioner for consideration of plaintiff's application beyond the second step of the sequential analysis.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served

with a copy shall bar that party, except upon rounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 2nd day of March, 2006.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE